IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-10452

JUAREZ MIGUEL BIBBS

Plaintiff-Appellant

v.

LESLIE EARLY; JAMIE BURKHOLDER; RICHARD GIBSON

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Juarez Miguel Bibbs, a prisoner in Amarillo, Texas, brought an action under 42 U.S.C. § 1983. He alleged that after he lodged several grievances with correctional officers, they turned on a "purge fan" in his cell for approximately four and one-half hours on four consecutive nights, causing the temperatures in his cell to drop below freezing. The district court granted Defendants' summary judgment motion based on a magistrate judge's recommendation, finding that the officers' alleged retaliation was de minimis. Bibbs appealed.

I

Juarez Miguel Bibbs, Texas prisoner # 649087, is incarcerated in Amarillo, Texas at the Clements Unit. On September 12, 2005, he filed a complaint under

§ 1983. He alleged that each of the Defendants – officers at the unit – had retaliated against him for filing grievances. He filed the grievances after Officers Early and Burkholder in October and November 2004 allegedly "failed to conduct" their "job duties properly"[1] while assigned to Bibbs' pod. When these officers and Officer Gibson were assigned to his pod in December 2004, Bibbs alleged that they turned on a "purge fan" for four consecutive nights, subjecting him to freezing temperatures for approximately four and one-half hours each night.[2] The fans allegedly "pulled the outside air into the pod and cells. The outside air on these dates was about 20 degrees." "It was so cold," he alleged, "I had to wake up put on all my clothes and use two (2) blankets to try to keep warm." In his later objection to the magistrate's report, Bibbs attached records showing that the low temperature in Amarillo on December 13 and 14, two of the days when the purge fan was allegedly running, was in the 20's each day. As a result of these conditions, Bibbs alleged that he was unable to eat and had "aches/pains in my back, side and head . . . chills . . . headaches," and a "sore and swollen" throat but that he avoided the three-dollar fee for seeing a doctor by treating his "flu symptoms" with "cough syrup and cold tablets."

His original complaint also alleged that he alerted Defendants to the conditions but they did not remedy them. When he asked Officer Early to turn the fan off she allegedly responded, "The fan is on automatic. I can't turn it off," while a later inquiry to the maintenance department by Bibbs allegedly showed that the fan was not automatic. According to Bibbs' complaint, Officers

---

[1] Bibbs alleged that they "failed to conduct proper ingress and regress as outlined" in the TDCJ security manual.

[2] In his general paragraph under the heading "complaint," Bibbs alleged that "defendants retaliated by intentionally, purposefully, and maliciously subjecting plaintiff to 20 degree temperatures for five (5) hours a day for four (4) days in a row." Later in his complaint he alleged that the purge fan was on from approximately 2:00 AM to 6:30 AM each morning on December 13, 14, 15, and 16.

Burkholder and Gibson gave similar responses when he asked them to turn off the fan, stating, "The fan is on automatic and I have no control over the fan." "Then as he walked off he laughed and said, 'You mother-f_ _ _ _rs gone stop writing grievances.'" Officer Gibson allegedly replied, "It's not cold in here, it feels good. If you all would stop writing grievances you would not have to worry about it being cold. You know we stick together."

The case was referred to a magistrate. Defendants moved for summary judgment, submitting Bibbs' medical records to show that he had not requested medical assistance, urging qualified immunity,[3] and maintaining that Bibbs' allegations failed to state a claim of retaliation and if Bibbs suffered any injury, it was de minimis. Bibbs filed a response in opposition and attached supporting affidavits. The magistrate prepared a report and recommendation, finding that Bibbs provided "allegations which a fact-finder could consider sufficient to establish retaliatory intent and causation" but that

> the injury of which plaintiff complains, "flue [sic] like symptoms" relieved by over the counter medication and not serious enough in severity or duration to warrant plaintiff making any request for medical attention, is not nearly as sustained or as severe as those the Fifth Circuit has found sufficient to state a claim of retaliation. Consequently, the claimed injury is de minimis for purposes of First Amendment analysis. Further, plaintiff . . . was not deterred from exercising his First Amendment right to file subsequent grievances, as shown by his prompt filing of the Step 1 and Step 2 grievance on the retaliation claim forming the basis of the instant suit.

Bibbs filed an objection to the report and recommendations, urging that his symptoms complained of were sufficiently severe to support a retaliation claim.

Prior to the magistrate's report, Bibbs had made a motion to join unnamed defendants in their individual capacities. He alleged that these defendants were assigned to his pod with the existing Defendants, that they "knew the purge fan

---

[3] Defendants do not raise immunity on appeal.

was on pulling the 20 degree temperture [sic] into the cells causing the inmates to be subjected to the extreme cold. They could have turned the fan off but did not." The district court denied this motion, finding, "At most, plaintiff's allegations against the prospective four additional defendants state a claim of negligence, not retaliation and not deliberate indifference. Section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care." It concluded, "As to the prospective additional four unnamed defendants, plaintiff has failed to state a claim on which relief can be granted; and his motion is, therefore, DENIED." On March 7, 2007, the court also entered an order granting Defendants' summary judgment motion and dismissing all of Bibbs' claims with prejudice. Bibbs filed a motion for reconsideration, which the court denied. Bibbs then appealed.

II

"The law of this circuit is clearly established . . . that a prison official may not retaliate against or harass an inmate . . . for complaining to a supervisor about a guard's misconduct."[4] "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."[5] We review de novo a district court's grant of summary judgment to Defendants on a retaliation claim,[6] placing the burden on the moving party to show that there is no genuine issue of material fact and, if that burden is met, on the nonmoving party to "set forth specific facts showing the existence of a genuine issue for trial."[7] Defendants do

---

[4] Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

[5] Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999).

[6] Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006).

[7] Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(e)).

not dispute that Bibbs alleged facts and produced evidence to establish a specific constitutional right or Defendants' intention to retaliate against him for exercising his constitutional rights.[8]  However, they maintain that the district court correctly found that Bibbs' retaliation claim was de minimis and that, alternatively, we should affirm the district court's holding because there was inadequate summary judgment evidence of causation.[9]  Bibbs urges that the court erred in granting Defendants' summary judgment motion and dismissing his claims because there was a genuine issue of material fact as to whether his retaliation claim involved something more than de minimis retaliation.

"Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."[10]  Where an inmate was allegedly transferred to a food services job and thus "limited to approximately five hours per week to conduct legal research," this evidence was inadequate to support a retaliation claim, as five hours of library time did not violate his right of access to the court.[11]  Similarly, where an inmate alleged that a defendant retaliated against him by removing him "from his job as inmate counsel" and later transferring him to another prison, this was inadequate to support a retaliation claim, as "[a]

---

[8] See also Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) ("A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest. . . . Filling out a prison-mandated form and complaining about treatment by means of a private letter to the warden can be compatible with the acceptable behavior of a prisoner and thus may not adversely affect the discipline of the prison.").

[9] Specifically, they urge, "Defendants-Appellees still contend that Bibbs has failed to set forth a chronology of events from which retaliation may be plausibly inferred. . . . The plausible inference is not that Defendants-Appellees are retaliating against Bibbs for grievances filed months earlier, but rather that there was a problem with the purge fans that was addressed when Bibbs complained about it."

[10] Morris, 449 F.3d at 686.

[11] Jones, 188 F.3d at 325-26.

prisoner has no constitutionally protected interest in a particular facility or a specific work assignment."[12]

But an alleged adverse retaliatory act against an inmate was not de minimis where, following an inmate's filing of a grievance, an official "filed a disciplinary report" against the inmate and the inmate alleged that another official "accepted the disciplinary charge, that he was convicted in a disciplinary proceeding . . . , and that he was punished with 27 days of commissary and cell restrictions."[13] In Parker v. Carpenter, a pretrial detainee, after allegedly having a "verbal altercation with a jail officer," was transferred "from the low-risk minimum security section to the overcrowded violent inmate section" of a jail.[14] He also alleged that in the violent inmate section, he was "denied access to a bed to lay down on, despite jail official's [sic] knowledge of his serious back condition."[15] We found that he had stated a cognizable claim for retaliation under § 1983, particularly "because pretrial detainees are entitled to protection from adverse conditions of confinement created by prison officials for punitive purposes."[16] And in Jackson v. Cain, where an inmate claimed "that he was moved from a desirable job assignment to a 'punishment crew' because he wrote an arguably offensive remark on the clothes release form and also a letter to the prison warden,"[17] we held that the inmate had "raised an issue of material fact regarding the motives behind the prison authorities' decision to switch him" to

---

[12] Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996) (per curiam).

[13] Hart, 343 F.3d at 763.

[14] 978 F.2d 190, 192 (5th Cir. 1992).

[15] Id.

[16] Id. at 192-93.

[17] 864 F.2d at 1247.

the "punishment crew."[18]  As such, we held that "summary judgment against . . . [plaintiff] was inappropriate."[19]  We recognized that "a prisoner has no constitutional right to a specific work assignment" – "[t]here is no question that the prison officials had the general authority to reassign . . . [plaintiff]  to new work."[20]  "This general authority however, can be exceeded."[21]

> [T]he prison officials could have transferred . . . [plaintiff] to any job for almost any reason or no reason at all, and he would have had no claim.  But while this decision may be arbitrary, it may not be retaliatory against . . . [plaintiff's] exercise of constitutional rights, and while it may be punishment it may not be in excess of the prison's own guidelines or without minimal due process.[22]

Nor was Bibbs, as a legally incarcerated individual, entitled to the comforts of everyday life.[23]  But we are persuaded that Bibbs has raised a cognizable claim of retaliation by alleging and providing supporting evidence that he exercised his First Amendment rights and was then subjected to below-freezing temperatures for more than four hours during each of four consecutive nights – a measure of retaliation.   Under the Eighth Amendment, "'[p]risoners have a right to protection from extreme cold.'"[24]  The cold here was not of the "extreme" type

---

[18] Id. at 1248.

[19] Id.

[20] Id.

[21] Id.

[22] Id. at 1248 n.3; see also Morris, 449 F.3d at 685.

[23] See, e.g., Palmer v. Johnson, 193 F.3d 346, 351 (5th Cir. 1999) (observing that "the constitution 'does not mandate comfortable prisons'" (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981))).

[24] Id. at 353 (quoting Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir.1997)).

described in Palmer v. Johnson that rose to an Eighth Amendment violation.[25] But our standard for retaliation claims does not require resulting "harm" for a claim to be actionable under § 1983.[26] Bibbs has at minimum raised a question of material fact on his retaliation claim. Subjecting an "ordinary person" to four straight nights of 20-degree temperatures might well "'chill or silence a person of ordinary firmness from future First Amendment activities'"[27] – in more ways than one. The fact that Bibbs, following his exposure to the purge fan, filed a "Step 1 and Step 2 grievance on the retaliation claim forming the basis of the instant suit" does not persuade us otherwise, particularly at the summary judgment stage. The analysis at the least is not wholly subjective,[28] and the alleged conditions created by the retaliatory acts may have been sufficiently severe to deter future grievances unrelated to the purge fan but also to spur Bibbs to challenge the retaliatory conditions themselves in an attempt to avoid future retaliation.

## III

---

[25] Id. at 349. In Palmer, a warden ordered Palmer and 48 other inmates to spend the night in a field. Palmer was in short sleeves, and the temperature dropped below 58 degrees. The prisoners were denied jackets and blankets, and the inmates "tried to stay warm by huddling together, piling on top of one another, and digging holes in the dirt."

[26] Morris, 449 F.3d at 685-86 (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir.1996) (en banc), vacated on other grounds, 523 U.S. 574 (1998)) (agreeing with the District of Columbia Circuit's standard that an "inmate's retaliation claim must allege adverse acts that 'would chill or silence a person of ordinary firmness from future First Amendment activities'").

[27] Id. at 685 (quoting Crawford, 93 F.3d at 826).

[28] See Morris, 449 F.3d at 686 (discussing the "ordinary firmness" standard); see also Johnson v. Rodriguez, 110 F.3d 299, 314 (5th Cir. 1997) (reversing and remanding a magistrate judge's holding that inmates were retaliated against in violation of constitutional rights, where "[t]he magistrate judge's conclusion of constitutional injury relie[d] exclusively upon testimony concerning the subjective appraisal of prisoners, with little or nothing in the way of objective evidence of actual injury" (citing United States v. Ramsey, 431 U.S. 606, 622-24 (1977))); Ramsey, 431 U.S. at 624 (reversing a district court's retaliation holding where "any 'chill' that might exist under . . . [the] circumstances may fairly be considered not only 'minimal,' but also wholly subjective").

Defendants maintain that even if Bibbs' retaliation claim is not de minimis, we should affirm the district court's ruling on the alternative basis that Bibbs did not present sufficient evidence of causation to survive summary judgment. We are not persuaded. To prevail on a retaliation claim, an inmate "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"[29] Bibbs alleged in his complaint that he filed grievances against two officers and that approximately one month after he filed his last grievance, the same officers he had complained of, and an additional officer, refused to turn off the purge fan. When he asked Defendants to turn off the purge fan, they claimed that the fan was on "auto" and that they could not turn it off. In his response to Defendants' motion for summary judgment, Bibbs attached a letter that he had written to the prison maintenance department, complaining of the purge fan and stating that he had been "told the fan is auto." He also attached the response from the maintenance department, which indicated that the operation of the fan was not automatic.[30] Bibbs alleged in his complaint that Defendants made comments to the effect that if the inmates stopped writing grievances the purge fans would be turned off, responding when Bibbs complained of the fan, "You mother-f_ _ _ _rs gone stop writing grievances" and "If you all would stop writing grievances you would not have to worry about it being cold." He also alleged in a declaration filed pursuant to 28 U.S.C. § 1746 that when he complained to Officer Early about the purge fan, she replied, "You

---

[29] Woods 60 F.3d at 1166 (quoting Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

[30] The response from maintenance provided, "This is not an auto function on purge fans." Defendants erroneously maintain in their reply brief that "[t]hough Bibbs asserts that he received a response from the maintenance department that the fans were not automatic, he did not present evidence of this before the district court." The letter was attached to his response before that court.

all gonna learn about writing me up!" In affidavits from other inmates attached to Bibbs' response to Defendants' motion for summary judgment, inmates similarly testified that when asked if she would turn off the fan, Early "stated no she would not and that she can do as she wants to do and if I didn't like it then write a grievance, she didn't care."[31] The same inmate testified that Gibson "also refused to turn off the fan, stating something in the effect of he would leave it on all the time if it was left up to him and that all we do is complain."[32] Another inmate testified in an affidavit attached to Bibbs' response that Early said that the fan was "automatic."[33] Further, Bibbs alleged that the retaliation occurred after he filed his grievances: his complaint stated that he "and several other offenders" filed a grievance against Officer Early after October 18, 2004, and against Officer Burkholder after November 11, 2004.[34] The purge fan incidents allegedly occurred from December 13 through 16, 2004. Rather than adducing "mere conclusory allegations of retaliation," Bibbs alleged and provided evidence of "'a chronology of events from which retaliation may plausibly be inferred.'"[35] Although some cases where we have found adequate allegations of

---

[31] Affidavit of Steven Smith, Executed Jan. 29, 2005.

[32] Id.

[33] Affidavit of Anthony Roberson, Executed Feb. 1, 2005.

[34] The grievances are not in the record, but Defendants acknowledged that Bibbs filed grievances in their motion for summary judgment, stating, "Plaintiff claims that he was being retaliated against for filing administrative grievances against Defendants individually. Plaintiff assumes that Defendants [sic] Early is retaliating against him for a grievance that was filed over two months earlier, which found that there was no evidence of Plaintiff's allegations. Plaintiff assumes that Defendant Burkholder is retaliating against him for a grievance that was filed over a month earlier, which also found that there was no evidence of Plaintiff's allegations."

[35] Woods, 60 F.3d at 1166 (quoting Cain, 857 F.2d at 1143 n.6).

causation on summary judgment have involved a tighter chain of events,[36] the lapse of a month between the filing of his last grievance and the alleged retaliation does not foreclose a finding of a genuine issue of material fact on the causation question, particularly given the comments of the guards directly referring to inmates' filing of grievances when inmates complained of the purge fan. Resolving the factual controversies "in favor of the nonmoving party,"[37] we are not persuaded that Defendants were entitled to summary judgment on the alternative basis that Bibbs failed to adduce sufficient evidence in support of causation.[38]

IV

Finally, we move to Bibbs' motion to join four unnamed defendants who allegedly could have but failed to turn off the purge fans. Bibbs moved to join these defendants more than 20 days after the Defendants were served, so the requested joinder is governed by Rule 21 of the Federal Rules of Civil Procedure, meaning leave of court was required to amend the complaint.[39] When the district court ruled on Bibbs' joinder motion, Rule 21 provided that "[p]arties

---

[36] See, e.g., Woods, 60 F.3d at 1162-63 (plaintiff reported a threat from an officer to a judge "who was presiding over pending prison litigation" and to a warden; three days later he received a disciplinary charge and was informed "that he would be placed in administrative lockdown"); Hart, 343 F.3d at 763 (the plaintiff "alleged that, only days after making such complaints, [one of the defendants] filed a disciplinary report against . . . [him]").

[37] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[38] We note that the magistrate so found, stating, "[B]y his affidavit at Exhibit E . . . plaintiff provides allegations which a fact-finder could consider sufficient to establish retaliatory intent and causation."

[39] See Fed. R. Civ. P. 15(a) (providing that "[a] party may amend its pleading once as a matter of course: (A) before being served with a responsive pleading; or (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar"); McLellan v. Miss. Power & Light Co., 526 F.2d 870, 872-73 (5th Cir. 1976), modified on reh'g on other grounds, 545 F.2d 919 (5th Cir. 1977) (finding that Rule 15 "takes precedence" over Rule 21 where a party falls within Rule 15 confines – for example, where the party "attempts to drop or add parties by an amended pleading filed before a responsive pleading is served").

may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."[40] Yet a "district court has broad discretion in determining the propriety of joining . . . a particular party as a defendant,"[41] and we find no abuse of that discretion here. Bibbs' claims in his motion to join were futile,[42] as they failed to allege retaliation or an Eighth Amendment violation. Bibbs did not allege that the unnamed four officers – when they were allegedly present during the cold prison conditions and failed to correct them – were aware of his having previously exercised a constitutional right; he thus failed to allege or adduce evidence of a chronology of events from which retaliation could be inferred. Furthermore, the cold he experienced, although sufficient to raise a fact question as to retaliation, does not rise to the level of "extreme cold" from which prisoners are protected under the Eighth Amendment. Unlike the inmates in Palmer,[43] Bibbs had two blankets and was able to put on all of his clothes to abate partially the alleged harsh temperature.

V

For the reasons stated above, we REVERSE and REMAND.

---

[40] Fed. R. Civ. P. 21 (2007) (amended Dec. 1, 2007).

[41] Williams v. Hoyt, 556 F.2d 1336, 1341 (5th Cir. 1977) (citing Gentry v. Smith, 487 F.2d 571 (5th Cir. 1973)).

[42] See United States ex rel. Adrian v. Regents of Univ. of Cal., 363 F.3d 398, 403 (5th Cir. 2004) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962 )) (a court abuses its discretion if it refuses "outright" to grant leave to amend "without a justification such as . . . 'futility of amendment'").

[43] See supra note 25.