# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20306

United States Court of Appeals
Fif h Circuit

**FILED**
December 12, 2016

Lyle W. Cayce
Clerk

LAWRENCE HIGGINS,

      Plaintiff–Appellant,

v.

RICHARD MORRIS, Warden; ERNEST NAVARRETE, Major; DELETA
JONES, Captain,

      Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2419

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

      Lawrence Higgins, an inmate of the Texas Department of Criminal Justice (TDCJ), asserts that certain TDCJ officers retaliated against him for using the prison grievance system by assigning him a less desirable custody status than he would otherwise have been assigned. The district court granted the officers' motion for summary judgment based on their assertion of qualified

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

immunity, finding that Higgins failed to show a causal connection between retaliatory motive and the adverse action taken against him. We reverse the grant of summary judgment and remand for further proceedings.

**I**

Higgins provided a urine sample that tested positive for marijuana. He was found guilty of the disciplinary offense of using or possessing unauthorized drugs, and consequently, a three-person panel assigned him to a G-4 custody level. Higgins then filed a successful grievance, and the disciplinary action was overturned because the supervisor, Ernest Navarrete, had failed to sign a required form for the drug test. The TDCJ exercised its right to rehear the case and again found Higgins guilty of the same disciplinary offense. A different panel then reassessed Higgins's punishment. This second panel included Navarrete, the officer who had originally failed to sign the underlying drug test, Betty Germany, who had served on the prior panel, and Deleta Jones. Reading the record in the light most favorable to Higgins, he appears to allege that he was present at the second hearing when the panel discussed what the consequences of the drug possession or use should be. He alleges that initially two of the three members of the panel suggested a change to a G-4 custody level, the same classification he had received before filing the grievance. However, Higgins alleges Navarrete then stated that he remembered Higgins as the prisoner who had filed the grievance that overturned the prior disciplinary action for Navarrete's failure to sign paperwork. According to Higgins, Navarrete stated that he would have "put [Higgins] in closed custody [G-5] for all this trouble." After Navarrete's remark, Jones purportedly changed her vote to the harsher G-5 classification suggested by Navarrete. When Higgins protested the demotion, Navarrete

15-20306

allegedly replied, "[You're] the one who filed a grievance," and Jones told Higgins to "file another grievance."

Higgins brought this suit under 42 U.S.C. § 1983, arguing that the officers retaliated against him for filing a grievance by assigning him to a more restrictive custody status than he would otherwise have been assigned. The officers moved for summary judgment, asserting that qualified immunity applied because Higgins had failed to assert a violation of a constitutional right and, in any event, their actions were reasonable. The district court granted summary judgment, concluding that Higgins failed to show that but for the retaliatory motive, the custody demotion would not have occurred, and thus failed to support his claim for retaliation.

## II

This court reviews a district court's grant of summary judgment de novo.[1] "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[2] This court has considered a prisoner's verified or sworn pleadings to be competent summary judgment evidence.[3]

---

[1] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009); *see also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

[2] *Hart*, 343 F.3d at 764 (citing FED. R. CIV. P. 56(c)).

[3] *See Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) ("[A] verified complaint and other verified pleadings serve as competent summary judgment evidence."); *Hart*, 343 F.3d at 765 ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (noting that a complaint verified as true and correct under penalty of perjury could constitute competent summary judgment evidence). Under 28 U.S.C. § 1746(2), a statement "in writing . . . which is subscribed by [the

15-20306

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[4] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[5] This "demanding standard"[6] protects "all but the plainly incompetent or those who knowingly violate the law."[7] Because it has long been "clearly established . . . that a prison official may not retaliate against or harass an inmate . . . for complaining to a supervisor about a guard's misconduct,"[8] we focus our inquiry on whether Higgins has presented a genuine dispute of material fact as to whether the TDCJ officers violated this right.

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."[9] In order to show retaliation, the inmate "must produce direct evidence of motivation or, the more probable scenario, 'allege a

---

authoring individual], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'" will satisfy any requirement that a matter be supported by "sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same."

[4] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[5] *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

[6] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

[7] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[8] *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995); *accord Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) ("A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct.").

[9] *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (per curiam)); *Hart*, 343 F.3d at 764 (quoting *Greninger*, 188 F.3d at 324-25).

chronology of events from which retaliation may plausibly be inferred.'"[10]  To show causation, the inmate must show that "but for the retaliatory motive[,] the complained of incident . . . would not have occurred."[11]

## III

The district court concluded that Higgins failed to show that, absent Navarrete's retaliation, Higgins would not have been demoted.  The district court reasoned that because at least one other committee member had to agree with Navarrete, Higgins failed to raise material facts as to causation.[12]

Higgins alleges that Jones and Germany both initially voted to assign him the same custody status (G-4) he had received previously.  Only after Navarrete commented on the former grievance did Jones change her vote.  When Higgins protested, Jones told him to "file another grievance."

In reviewing the summary judgment record, we must assume that Higgins's version of the facts is accurate, since he was the non-moving party and judgment was rendered against him.[13]  Accordingly, there is some evidence of causation.  Navarrete's statement suggests his own vote was motivated by retaliatory intent.  Two votes were necessary for classification, and it is clear that Germany voted for a G-4 rather than a G-5 custody classification.  Higgins has presented evidence that Jones may also have retaliated, or alternatively, that Navarrete's retaliatory motive caused Jones to change her vote.  A

---

[10] *Woods*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)); *see also Bibbs*, 541 F.3d at 272-73 (setting forth the same standard).

[11] *Woods*, 60 F.3d at 1166; *see also McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (setting forth the same standard).

[12] The other elements of the retaliation claim are not present before us now.

[13] *See Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam) (explaining that "[i]n resolving questions of qualified immunity at summary judgment, courts . . . ask[] whether the facts, 'taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right.'" (alterations omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))).

reasonable person could infer that because Jones voted for G-4 until Navarrete raised Higgins's grievance, Jones's vote for a G-5 classification was motivated by retaliatory animus. Had either Navarrete or Jones voted differently, the more restrictive custody classification would not have been imposed. Higgins has raised an issue of material fact as to causation.

## IV

The district court did not determine whether the right Higgins asserted was clearly established, presumably because it concluded that Higgins had failed to support his claim for retaliation adequately. However, as noted above, we have held that it is "clearly established . . . that a prison official may not retaliate against . . . an inmate" for using the grievance system.[14] Nevertheless, the officers argue that their actions are reasonable because Higgins's classification was based on "the nature of the offense, and his need for supervision." However, "[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate."[15] There is a genuine dispute as to a material fact, namely whether the actions were retaliatory or based only on legitimate factors.

\*     \*     \*

We REVERSE the grant of summary judgment and REMAND for further proceedings.

---

[14] *Woods*, 60 F.3d at 1164.

[15] *Id.* at 1165-66 (refusing to require favorable termination in a retaliatory interference claim); *see also Jackson v. Cain*, 864 F.2d 1235, 1248-49 (5th Cir. 1989) (holding that summary judgment was improper in a case in which a prisoner alleged a facially valid claim of retaliation but the government asserted poor performance was the actual motivator, because, even if grievance was ultimately determined to have been filed in bad faith, there was a dispute of material fact).