RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

BERNARD ANTOINE HARDRICK,

> *Plaintiff-Appellant*,

> *v.*

> No. 24-1456

ERICA HUSS, Warden; TRISHA KUBONT MASKER, RN; CHRISTY NEGRINELLI, RN; CHARLES SCOTT, Health Unit Manager,

> *Defendants-Appellees*.

─────────────

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:21-cv-00229—Paul Lewis Maloney, District Judge.

Decided and Filed: September 9, 2025

Before: NORRIS, MOORE, and BLOOMEKATZ, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:** Sara E. Trudgeon, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. Bernard Hardrick, Baraga, Michigan, pro se.

─────────────

## OPINION

─────────────

PER CURIAM. Bernard Antoine Hardrick, a pro se Michigan prisoner, sued several officials at the Marquette Branch Prison for civil rights violations stemming from his hazardous living conditions during the COVID-19 pandemic. Hardrick alleged that an industrial-sized fan blew dangerously cold air and dust into his cell, causing him to cough up blood. Despite knowing of this dangerous condition, Warden Erica Huss allegedly refused to avert the fan because Hardrick had filed grievances against her, thereby violating his First and Eighth

Amendment rights.   Hardrick also alleged that Warden Huss and members of the prison's medical staff endangered his health by erroneously designating him as having COVID-19 and placing him in housing with prisoners who had tested positive for the virus, thereby violating his Eighth Amendment rights.

The district court granted the defendants' motion to dismiss all of Hardrick's claims.  We reverse as to Hardrick's First Amendment retaliation claim against Warden Huss and affirm as to all other claims.

## BACKGROUND

Hardrick's claims arise out of two conditions of his confinement at the Marquette Branch Prison (MBP) during the height of the COVID-19 pandemic—one stemming from the health effects of an industrial-sized fan, and the other stemming from proximity to prisoners with COVID-19.  As to both situations, we recite the facts as Hardrick alleges them in his complaint, as we must at this early stage of the litigation.  *Savel v. MetroHealth Sys.*, 96 F.4th 932, 937 (6th Cir. 2024).

*Industrial-Sized Fan.*   While incarcerated at MBP, prison officials placed Hardrick in a cell located across the hallway from an industrial-sized fan.  The fan was "mounted on the wall and adjusted to aim directly into [his] cell."  Compl., R. 1, PageID 3.  The air from the fan was "excessively cold" and blew in dust and "spittle" from other coughing inmates.  *Id.* at PageID 4, 10.  These conditions caused Hardrick to "cough up blood" and to suffer other less severe discomforts.  *Id.*  Hardrick first complained about the fan to Warden Huss, she agreed that it should not have been angled towards Hardrick's cell.  Although he told her that he was coughing up blood, Warden Huss did not indicate that she would address the problem.

Shortly thereafter, Hardrick filed two grievances about his living conditions through the prison's internal system for lodging complaints.  The first grievance was about the fan.  Hardrick stated that he was "suffering every day" from the effects of the cold air and dust blowing into his cell.  Ex. A, R.1-1, PageID 20.  In the second grievance, Hardrick raised concerns about being housed in a unit with prisoners who had tested positive for COVID-19.  Prison officials rejected both grievances, saying they were improper because they were "not specific" to Hardrick and

pertained to "the prison population as a whole." Ex. A, R. 1-1, PageID 21; Ex. B, R. 2-1, PageID 25. Hardrick's internal appeals of those rejections failed.

In addition to these formal grievances, Hardrick complained verbally about the fan to prison leadership. The deputy warden told Hardrick that "there was nothing he could do" about the fan, and that Hardrick "would have to take it up with the warden [(i.e., Huss)]." Compl., R. 1, PageID 5. So Hardrick complained to Warden Huss again, repeating that the fan was causing him to inhale dust and spittle and cough up blood. Warden Huss responded: "Why would I help a guy that files grievances against me. Besides that, you're the same guy who gives my staff a hard time whenever they come around with [COVID-19] tests and you refuse it. I tell you what, I'll cut the fan off when you take the test; other than that, make the best of your refrigerated cell." *Id.* at PageID 11. Hardrick did not get relief from the "physical maladies" caused by the fan until prison officials transferred him to a different MBP unit ten days later. *Id.* at PageID 11, 13.

*COVID-19 Housing.* In addition to the fan, Hardrick voiced a second complaint about his housing—his cell was in a unit that exposed him to COVID-19. Two of the prison's nurses, Trisha Masker and Christy Negrinelli, and the manager of the prison's health unit, Charles Scott, designated Hardrick as a "Person Under Investigation" (PUI). *Id.* at PageID 2, 6. Under the facility's policies, this designation meant Hardrick had tested positive for COVID-19. But Hardrick had never tested positive for COVID-19. Instead, he had tested negative upon entry to MBP and again the week after. Yet because of the PUI designation, Hardrick remained near other inmates who had tested positive for COVID-19.

Hardrick attempted to inform prison officials that he should not be housed with COVID-19-positive inmates because he never tested positive and in fact had already tested negative twice. Officials—who appeared to be conducting weekly COVID tests—explained to Hardrick that he had to remain in that unit with COVID-19-positive inmates until he submitted to another COVID-19 test that yielded a negative result. But Hardrick refused to take the weekly COVID test. Instead, he filed a new grievance, and communicated with Warden Huss, Scott, and Negrinelli about how he was falsely designated as a PUI and should not be housed with COVID-19-positive inmates. He expressed concern that it "placed him at an even higher risk of

contracting the virus." *Id*. at PageID 9. Prison officials rejected his grievance, and Warden Huss, Scott, and Negrinelli rebuffed his concerns.

As previously mentioned, prison officials eventually moved Hardrick away from the industrial-sized fan, but they placed him in another unit "infested" with COVID-19. *Id*. at PageID 11. After Hardrick filed this lawsuit, prison officials transferred him from MBP to another facility.

*Procedural History*. While still at MBP, Hardrick brought this case under 42 U.S.C. § 1983, claiming that several prison officials violated his constitutional rights. *First*, he claimed that Warden Huss violated his First and Eighth Amendment rights by not addressing the serious health conditions caused by the industrial-sized fan, and, specifically, for refusing to ameliorate this hazard because he had filed grievances against her. *Second*, he claimed that Warden Huss, Scott, Masker, and Negrinelli violated his Eighth Amendment right by deliberately ignoring his medical needs and placing him in a unit with COVID-19-positive inmates.

In response, the defendants first moved for summary judgment, arguing that Hardrick failed to exhaust his administrative remedies. The district court denied the motion. Later, the defendants moved to dismiss, arguing that Hardrick lacked standing to bring his claims about proximity to prisoners with COVID-19, and that the defendants were entitled to qualified immunity on all his claims. A magistrate judge recommended that the motion be granted. Over Hardrick's objections, the district court agreed, adopted the magistrate judge's report and recommendation, and dismissed Hardrick's complaint.[1] Hardrick timely appealed.

## ANALYSIS

We review de novo the district court's dismissal of Hardrick's complaint. *Willman v. U.S. Att'y Gen*., 972 F.3d 819, 822 (6th Cir. 2020). The district court dismissed the complaint in part on standing grounds. For the remaining claims, it concluded that the officers were entitled to qualified immunity because Hardrick failed to plead a constitutional violation or, in the alternative, a violation of clearly established law. For each of these bases, our review is de novo.

---

[1]Because the district court adopted the magistrate judge's report and recommendation, we treat that as the opinion of the district court. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 n.2 (6th Cir. 2008).

*Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013) (standing); *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (qualified immunity).  We consider each of Hardrick's constitutional claims in turn, concluding that the district court erroneously dismissed Hardrick's First Amendment claim against Warden Huss, but properly dismissed his Eighth Amendment claims.

## I.        Timeliness of Defendants' Motion to Dismiss

Before turning to the merits, however, we must first address Hardrick's argument that the defendants' motion to dismiss was untimely and thus that they have waived the right to dismissal at this stage in the litigation.

Hardrick's waiver argument appears to proceed in two steps.  Neither one is persuasive. *First*, Hardrick maintains that the defendants' motion to dismiss was untimely because they did not file it within 21 days of service, as required by Federal Rule of Civil Procedure 12(a)(1).  But Rule 12(a) provides timelines for responsive pleadings "[u]nless another timeline is specified by a federal statute."  Fed. R. Civ. P. 12(a).  This case is governed by the Prison Litigation Reform Act (PLRA), which alters the timeline.  Section 1997e(g) states that, unless a judge orders otherwise, defendants need not respond at all to a prisoner's lawsuit.  42 U.S.C. § 1997e(g).  And if defendants "waive the right to reply" to a prisoner's lawsuit, that provision states that such waiver does "not constitute an admission of the allegations contained in the complaint."  *Id.* So the 21-day clock from Rule 12(a)(1) does not apply here.

*Second*, Hardrick points to the order of the defendants' filings, arguing that the defendants could not file a motion to dismiss his lawsuit after having filed a motion for summary judgment on exhaustion grounds.  For this proposition, he cites only to the same section of the PLRA we just mentioned—42 U.S.C. § 1997e(g).  But, as described above, that provision states that defendants may decide not to reply at all to a prisoner's lawsuit without it constituting an admission of the allegations.  It does not address the order of defendants' filings.  Hardrick's argument also ignores a different provision of the PLRA, which requires the district court to dismiss a case "at any time" if the complaint "fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2); *see also* 42 U.S.C. § 1997e(c)(1).  Hardrick, therefore, fails to demonstrate why the district court could not have dismissed the case for failure to state a claim

just because it denied the defendants summary judgment as to exhaustion. Accordingly, we proceed with evaluating the district court's decision.

## II.     Claims Related to the Industrial-Sized Fan

We first address Hardrick's claims related to the industrial-sized fan, which he alleged blew cold air, dust, and "spittle from coughing inmates" directly into his cell, causing him to cough up blood. Compl., R. 1, PageID 4, 10. Hardrick alleges that Warden Huss refused to ameliorate these conditions because he filed grievances against her and other prison officials, and that such retaliation violates the First Amendment. Warden Huss responds that she's entitled to qualified immunity on this claim. An officer is entitled to qualified immunity unless the plaintiff alleges facts that, when accepted as true, "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known his conduct violated that right." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (2016) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, we consider first whether, accepting the complaint's factual allegations as true, Hardrick has plausibly stated a First Amendment retaliation claim against Warden Huss. If so, we ask whether Warden Huss's actions violated clearly established law.[2]

### A.     First Amendment Violation

For his First Amendment retaliation claim against Warden Huss, Hardrick must satisfy three elements. *First*, that "he engaged in protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). *Second*, that Warden Huss took an adverse action against him. *Id.* And *third*, that "the adverse

---

[2]Hardrick also claimed that Warden Huss's deliberate disregard for the harm caused by the industrial-sized fan violated his Eighth Amendment rights. But Hardrick did not preserve this claim, so we do not address it. The magistrate judge recommended that this claim be dismissed and warned the parties that they had to timely object to preserve their claims for review. Hardrick objected as to his First Amendment claim, but not as to his Eighth Amendment claim. "[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011) (quoting *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991)). While we may excuse the failure to object, we find no "exceptional circumstances are present that justify disregarding the rule in the interests of justice." *Keeling v. Warden*, 673 F.3d 452, 458 (6th Cir. 2012) (citation omitted).

action was taken (at least in part) because of the protected conduct." *Id.* The parties dispute each of these elements, but ultimately, Hardrick has plausibly alleged all three.

### 1.       Protected Conduct

We first ask whether Hardrick engaged in protected conduct. He points to the three separate grievances he filed regarding his living conditions. It is well-settled that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (alteration in original) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). So Hardrick satisfied the protected-conduct element.

The district court concluded that these grievances did not constitute protected conduct, but we disagree with its reasoning. As an initial matter, the district court explained that "[a]busive or manipulative use of the grievance process" is not protected conduct, R&R, R. 55, PageID 406 (quoting *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014)), and that if Hardrick's grievances "are frivolous," they do not implicate his First Amendment right, *id.* (quoting *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)). It then concluded that Hardrick's grievance about the fan could not constitute protected activity because it was rejected for failing to raise "an issue that could be properly grieved in the grievance process." *Id.* at PageID 407. But we fail to understand how the prison's rejection of this grievance denies it First Amendment protection. The district court never found the grievance "frivolous," nor Hardrick's use of the grievance process "abusive." Quite the opposite; in a previous order, the district court questioned whether the grievances regarding the fan "were properly rejected as non-grievable." R&R, R. 33, PageID 201. So the prison's rejection of Hardrick's grievance cannot support the district court's dismissal.

Next, the district court reasoned that Hardrick's grievance about the fan could not satisfy the protected-activity element because it "did not allege that Warden Huss took any wrongful action." R&R, R. 55, PageID 407. But that's irrelevant. The protected activity did not need to be directed at Warden Huss; if a defendant retaliates based on protected activity aimed at other officials, it's still retaliation based on conduct protected by the First Amendment. *See, e.g.*,

*Thomas*, 481 F.3d at 437, 440; *Berkshire v. Dahl*, 928 F.3d 520, 532–34 (6th Cir. 2019). Indeed, that is what Hardrick alleges here. Hardrick's grievances about COVID-19 exposure (which the district court appears to have ignored), and about the fan (irrespective of whether it was directed at Warden Huss), can all constitute protected activity for his claim.

Lastly, the court concluded (and Warden Huss agrees) that the grievances could not constitute protected conduct because Hardrick filed them *after* the fan was turned on and pointed into his cell. Grievances filed after a prison official's alleged adverse action cannot, as a logical matter, form the basis for a retaliation claim; quite simply, the adverse action could not have been taken in response to the prisoner's grievance if the grievance hadn't been filed yet. *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005). It follows that Warden Huss could not have retaliated against Hardrick for filing grievances by turning on the fan. But this analysis, which perhaps sounds more in causation than protected conduct, is nonetheless flawed.

The district court's reasoning rests on a mischaracterization of Hardrick's claim. Hardrick does not allege that Warden Huss turned on the fan to retaliate for his grievances. Instead, he alleges that Warden Huss refused to take corrective action—such as changing the fan's angle, moving him to another cell, or turning the fan off—because he had filed grievances. Therefore, Hardrick's protected activity—filing grievances—occurred before the allegedly retaliatory act— refusing to address the maladies caused by the fan—and can serve as the basis for his retaliation claim.

### 2. Adverse Action

Moving to the next element of a retaliation claim, we conclude that Hardrick has plausibly pled that Warden Huss took an adverse action against him by refusing to address the harm from the industrial-sized fan. To evaluate whether conduct constitutes an "adverse action," we ask whether the alleged action would deter a person of "ordinary firmness" from engaging in protected activity. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). In most cases, this is a "question of fact" that is not "amenable to resolution as a matter of law." *Id.* At this stage, the district court must "weed out only inconsequential actions," such as "threats or deprivations [that] are so de minimis that they do not rise to the level of being constitutional violations."

*Thaddeus-X*, 175 F.3d at 398. Accordingly, the plaintiff need only establish that "the retaliatory acts amounted to more than a de minimis injury." *Hill*, 630 F.3d at 473 (quoting *Bell*, 308 F.3d at 606).

Hardrick has satisfied that burden. Warden Huss, while acknowledging that she had the ability to turn off or redirect the fan, refused to do so. And because of the fan, Hardrick lived in an "excessively cold" cell and was coughing up blood from frequent exposure to dust and cold air. Compl., R. 1, PageID 4, 10. Those conditions are more than "routine inconveniences of prison life." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). A person of "ordinary firmness" would be deterred from filing grievances if it meant they had to continue living in such conditions. *See Bibbs v. Early*, 541 F.3d 267, 271–72 (5th Cir. 2008) (citation omitted). So Warden Huss's refusal to ameliorate Hardrick's hazardous conditions constitutes an adverse action.

Following the district court's decision, Warden Huss views the fan as a "minor inconvenience." Appellees' Br. at 27 (quoting R&R, R. 55, PageID 408). Citing an unpublished district court case, *Johnson v. Pancheri*, No. 2:13-cv-334, 2015 WL 1022186, at *2 (W.D. Mich. Mar. 9, 2015), she argues that a fan blowing air into a prison cell does not rise to the level of an adverse action. But, given the record here, *Johnson* is inapposite. In *Johnson*, the inmate complained that the fan was too loud, not that it constantly blew cold air into the cell or caused health issues. *Id.* at *1. Hardrick complained that he was coughing up blood. Hardrick satisfies the adverse action prong of his First Amendment claim.

### 3.    Causation

Finally, Hardrick has sufficiently alleged causation. At this stage, Hardrick must provide enough facts to show that "the adverse action was motivated at least in part by [his] protected conduct." *Heyward v. Cooper*, 88 F.4th 648, 657 (6th Cir. 2023) (alteration in original) (citation omitted). Hardrick alleges that Warden Huss said: "Why would I help a guy that files grievances against me." Compl., R. 1, PageID 11. And then she refused to address the harm from the industrial-sized fan for another ten days. That is enough to plausibly plead causation.

*See Bibbs*, 541 F.3d at 272–74. With all three elements satisfied, Hardrick has plausibly stated a claim that Warden Huss retaliated against him in violation of the First Amendment.

### B.    Clearly Established Law

Nevertheless, Warden Huss is entitled to qualified immunity unless her actions violated clearly established law at the time of the alleged conduct. A legal principle is clearly established when, based on then-existing precedent, a "reasonable officer" would know that "his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2019) (quoting *Saucier v. Katz*, 433 U.S. 194, 202 (2001)).

We conclude that Warden Huss violated clearly established law when she refused to resolve the harms caused by the industrial-sized fan. We ask whether a reasonable officer at the time would have known that they cannot refuse to help an inmate who is coughing up blood because he filed grievances against her. The answer is yes. Prison officials have long known that they cannot "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). And our caselaw specifically prohibits officials from doing so in retaliation for the inmate having filed grievances. *See Thaddeus-X*, 175 F.3d at 384, 398. Indeed, this proposition is so firmly established that we have routinely held that officers violate the First Amendment when they delay or deny an inmate medical treatment in retaliation for filing grievances. *See, e.g.*, *Bell*, 308 F.3d at 605; *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (order); *Wash v. Gilless*, No. 99–5036, 2000 WL 659225, at *4 (6th Cir. May 11, 2000) (order). Warden Huss would therefore have had "fair and clear warning" that her actions were unlawful. *Heeter v. Bowers*, 99 F.4th 900, 915 (6th Cir. 2024) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam)).

Our conclusion is reinforced by asking whether a reasonable officer would have known at the time that they cannot harass an inmate with a cold fan because he filed grievances against her. The answer to this question is also yes. It is firmly established in our caselaw that prison officials may not engage in a campaign of harassment to punish prisoners for filing protected grievances. *Bell*, 308 F.3d at 604–05; *Thaddeus-X*, 175 F.3d at 398–99. Although we have not

specifically considered whether harassing a prisoner with a cold fan for ten days, when the jailer knows that the fan is causing serious discomfort and coughing blood, is unconstitutional retaliation, our prior caselaw suggests that it is sufficiently severe. *See Bell*, 308 F.3d at 604–05 (rifling through a prisoner's cell and stealing legal papers and medical diet snacks); *Heyward*, 88 F.4th at 659 (denying a prisoner access to a cultural-awareness group); *see also Spencer v. Bouchard*, 449 F.3d 721, 728–29 (6th Cir. 2006) (concluding that exposing a prisoner to cold temperatures for several months could violate the Eighth Amendment), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Bibbs*, 541 F.3d at 272 (explaining that the harms arising from exposure to a cold fan over four consecutive nights could establish retaliation even if they did not rise to the extreme levels that would violate the Eighth Amendment). On these allegations, Warden Huss violated clearly established law.

Moreover, we have repeatedly emphasized that retaliation claims should go to a jury unless they suffer from a clear legal defect such as a lack of causation, or the adverse action alleged is "truly 'inconsequential.'" *Maben*, 887 F.3d at 266 (quoting *Bell*, 308 F.3d at 603). That is because the question of whether a certain action would deter a person of ordinary firmness from exercising his First Amendment rights can rarely "be resolved as a matter of law." *Id.* (citation omitted). In such a fact-dependent inquiry, it is "generally inappropriate . . . to dismiss based on qualified immunity" at the pleading stage. *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Hence, the district court erred in dismissing Hardrick's First Amendment retaliation claim and granting Warden Huss qualified immunity. We reverse that ruling and remand for further proceedings on this claim.

### III.    Claims Related to COVID-19 Exposure

While Hardrick's First Amendment claim against Warden Huss can proceed, his Eighth Amendment claims relating to COVID-19 exposure cannot because he lacks standing to bring them. Hardrick alleges that various prison officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Specifically, Hardrick claimed that Masker, Negrinelli, and Scott improperly designated him as a PUI, which caused prison officials to house him near COVID-19-positive inmates during the height of the pandemic. Hardrick further alleges that Warden Huss sanctioned his placement in a "COVID infested" unit "knowing that

[he] was negative from the virus." Compl., R. 1, PageID 14. But because Hardrick did not allege that he contracted COVID-19 or suffered any other tangible harm from his proximity to prisoners with the virus, the district court properly dismissed these Eighth Amendment claims for lack of standing.

The "irreducible constitutional minimum of standing" requires (1) an injury in fact—i.e., one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"—that is (2) fairly traceable to the defendants' conduct and (3) likely redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). For the injury in fact requirement, "the risk of future harm on its own does not support Article III standing for [a] plaintiff['s] damages claim." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021).

Hardrick does not allege facts showing that he suffered a concrete and particularized injury redressable by monetary damages. He does not allege that he contracted COVID-19. Hardrick alleges only that, by being housed near inmates who had tested positive for the virus, he risked contracting COVID-19. That risk, without more, is insufficient to confer standing for monetary relief. *See TransUnion*, 594 U.S. at 441. And Hardrick does not allege a "*separate concrete harm*" beyond "the exposure to the risk of future harm itself." *Id*. at 436. Indeed, "[c]ourts have routinely dismissed [COVID-19-related] claims such as [Hardrick's] for lack of standing based on the absence of injury in fact," such as actually contracting the virus. *Lee v. Doe*, No. 20-CV-6176, 2022 WL 204355, at *4 (S.D.N.Y. Jan. 24, 2022) (collecting cases); *see also, e.g.*, *Gaffney v. Artis*, No. 1:22-cv-275, 2023 WL 2753168, at *2 (W.D. Mich. Apr. 3, 2023) (concluding that the plaintiff's "fear that he was exposed to COVID-19 or might have contracted COVID-19 is not a concrete injury which can be redressed by an award of damages"). The district court therefore properly dismissed Hardrick's deliberate-indifference claims relating to COVID-19 against Warden Huss, Masker, Negrinelli, and Scott for lack of standing.

**CONCLUSION**

For the foregoing reasons, we reverse the district court's dismissal of Hardrick's First Amendment retaliation claim against Warden Huss and remand for further proceedings consistent with this opinion. We affirm the dismissal of all the other claims.