**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-7679

PATRICK L. BOOKER,

Plaintiff - Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF CORRECTIONS; SYLVIA JONES;
ANN SHEPPARD; THIERRY NETTLES,

Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at
Charleston. Mary G. Lewis, District Judge. (2:12-cv-01957-MGL)

Argued: December 6, 2016                                    Decided: April 28, 2017

Before GREGORY, Chief Judge, and TRAXLER and DIAZ, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge Gregory wrote the majority
opinion, in which Judge Diaz joined. Judge Traxler wrote a dissenting opinion.

**ARGUED**: David Meir Zionts, COVINGTON & BURLING LLP, Washington, D.C.,
for Appellant. Michael D. Freeman, Sr., GRIFFITH, SHARP & LIIPFERT, LLC,
Beaufort, South Carolina, for Appellees. **ON BRIEF**: Robert A. Long, Jr.,
COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Hillary G. Meyer,
GRIFFITH, SHARP & LIIPFERT, LLC, Beaufort, South Carolina, for Appellees.

GREGORY, Chief Judge:

Patrick Booker, an inmate of the South Carolina Department of Corrections ("SCDC"), brought a claim under 42 U.S.C. § 1983 alleging that he received a disciplinary charge in retaliation for filing a prison grievance. The district court found that Booker's First Amendment right to be free from retaliation for filing a grievance was not clearly established, and it accordingly held that Appellees were entitled to qualified immunity and granted summary judgment in their favor. Because we find that Booker's right was clearly established, we vacate the judgment and remand to the district court for further proceedings.

I.

Booker mailed a legal document to the Dorchester County Sherriff's Office on November 8, 2010, but it was returned to him at Lieber Correctional Institution because he had not affixed the mailing address. Booker inspected the letter and noticed a slit along the length of the envelope. According to Booker, the sergeant who returned the mail to him indicated that the "confidentiality of its contents had been compromised." J.A. 18.

After learning this information, Booker initiated the prison grievance process by submitting a form known as a Request to Staff Member ("RSM"). The SCDC grievance process consists of several steps. Inmates must first try to "informally resolve a complaint" by either discussing their complaint with the appropriate supervisor or, as Booker did, by submitting an RSM form. J.A. 52. If informal resolution proves

2

unsuccessful, inmates may submit a formal grievance to the Inmate Grievance Coordinator within fifteen days of the incident (known as a Step 1 grievance), with appeals to the SCDC's central Grievance Branch (a Step 2 grievance) and eventually to the South Carolina Administrative Law Court. The SCDC has a policy document titled "Inmate Grievance System," which provides that "[n]o inmate will be subjected to reprisal, retaliation, harassment, or disciplinary action for filing a grievance or participating in the resolution of a grievance." J.A. 57–58.

Booker's RSM, which he addressed to the "Mailroom," made its way to Appellee Sylvia Jones, the mailroom supervisor at Lieber. J.A. 83–84. In his RSM, Booker objected to the prison's opening of and tampering with his legal mail and added that he intended to pursue civil and criminal remedies if he found his mail meddled with again.

Jones contends that in addition to filing the RSM, Booker verbally threatened her regarding the mail incident—a fact that Booker disputes. What is undisputed is that shortly after receiving the RSM, Jones submitted an "Incident Report" recommending that Booker be charged with an "809" disciplinary offense of "Threatening to Inflict Harm on/Assaulting an Employee and/or Members of the Public." J.A. 71, 84. An 809 offense is a Level 2 Disciplinary Offense, which carries penalties of disciplinary detention, loss of accrued good behavior time, and loss of visitation, employment, television, and other privileges. J.A. 67–68, 71. A hearing was later held on the disciplinary charge, at which Booker was found not guilty because he had made "legal threats" against Jones, not physical threats. J.A. 77.

3

In June 2012, Booker, proceeding pro se, filed suit in state court against Jones, SCDC, and two other SCDC employees, Ann Sheppard and Thierry Nettles. Booker alleged, along with other state and federal claims, that Jones filed a false disciplinary charge against him in retaliation for his submission of the RSM form. J.A. 18–19, 32. Booker identified the First Amendment as the source of this claim: "Sylvia Jones, Ann Sheppard and Thierry Nettles are liable unto Plaintiff in their individual/personal capacity for violating Plaintiff's First Amendment right to free speech and expression, and to be free from wrongful interference and unlawful retaliation for the exercise of such right." J.A. 32. Appellees removed the case to federal court and later moved for summary judgment.

In its order granting the motion, the district court explained that a First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. J.A. 115 (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). The court assumed, without deciding, that Booker had engaged in constitutionally protected activity when he filed the RSM form. J.A. 113. The district court still granted Appellees' motion, however, finding Booker had failed to produce sufficient evidence that he had suffered "adverse action as a result of the 809 [disciplinary] charge." J.A. 114.

4

In the first appeal, this Court vacated the district court's summary judgment order as to Booker's claim that Jones violated his First Amendment rights by submitting a disciplinary charge in retaliation for the grievance Booker submitted. *Booker v. S. Carolina Dep't of Corr.*, 583 F. App'x 43, 45 (4th Cir. 2014). Limiting our review to the second element, as the district court did, we concluded that Booker had "produced sufficient evidence that Jones' conduct would likely deter prisoners of ordinary firmness from exercising their First Amendment rights." *Id.* at 44. We added that the evidence, viewed in the light most favorable to Booker, supported a finding that the disciplinary charge filed against Booker was false. *Id.* We did not decide whether Booker had engaged in constitutionally protected conduct when he filed the RSM form. *Id.* at 44–45.

On remand, Appellees again moved for summary judgment. The district court did not reach the merits of Booker's retaliation claim this time, instead determining that Appellees were protected by qualified immunity. The district court specifically found that a "prison inmate's free speech right to submit internal grievances" was not clearly established. J.A. 136. The court acknowledged that the right was "perhaps sufficiently recognized in other federal circuits." J.A. 136. But because "there has been no published case law from the Supreme Court of the United States, the Fourth Circuit Court of Appeals, or the Supreme Court of South Carolina that squarely establishes" the right at issue, it concluded the right was not clearly established. J.A. 136–37. Accordingly, the court held that Appellees deserved qualified immunity on the retaliation claim and therefore granted their motion for summary judgment.

Booker timely noticed this appeal.

5

## II.

We review de novo a grant of summary judgment on the basis of qualified immunity. *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). Summary judgment is proper "only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *see also* Fed. R. Civ. P. 56(a).

Qualified immunity protects officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Id.* The doctrine weighs two important values—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In conducting the qualified immunity analysis, "our first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct." *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc). We then engage in a two-step inquiry, asking "whether a constitutional violation occurred" and "whether the right violated was clearly established" at the time of the official's conduct. *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Courts have discretion to take these steps in either order. *Pearson*, 555 U.S. at 236.

The "clearly established" prong lies at the heart of this case—we do not evaluate the merits of Booker's claim. A "right is clearly established only if its contours are

6

sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The unlawfulness of the official's conduct must be "apparent" in "light of pre-existing law." *Anderson*, 483 U.S. at 640. To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

We must consider not only "specifically adjudicated rights," but also "those manifestly included within more general applications of the core constitutional principles invoked." *Wall v. Wade*, 741 F.3d 492, 502–03 (4th Cir. 2014) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). In other words, defendants "can still be on notice that their conduct violates established law even in novel factual circumstances," so long as the law provided "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In conducting the clearly established analysis, we first examine "cases of controlling authority in [this] jurisdiction," *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))—that is, "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose," *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)).[1] We "ordinarily" need not look

---

[1] District court opinions, on the other hand, are not decisions of "controlling authority." As the Supreme Court recently explained in an opinion concerning qualified immunity, "[a] decision of a federal district court judge is not binding precedent in either (Continued)

any further than decisions from these courts. *Id.* But when "there are no such decisions from courts of controlling authority, we may look to 'a consensus of cases of persuasive authority' from *other jurisdictions*, if such exists." *Id.* at 280 (emphasis added) (quoting *Wilson*, 526 U.S. at 617).

The Supreme Court, in an opinion authored by Chief Justice Rehnquist, articulated that courts may rely on "a consensus of cases of persuasive authority" to determine whether a "reasonable officer could not have believed that his actions were lawful." *Wilson*, 526 U.S. at 617. Since *Wilson*, the Supreme Court has reaffirmed that "qualified immunity is lost when plaintiffs point either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'" *Ashcroft*, 563 U.S. at 742 (quoting *Wilson*, 526 U.S. at 617).[2] And in evaluating whether a right is clearly established in a given circuit, the Supreme Court has

_____

a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)). It is for this reason that "[m]any Courts of Appeals [] decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity." *Id.* (citing *Kalka v. Hawk*, 215 F.3d 90, 100 (D.C. Cir. 2000) (Tatel, J., concurring in part and concurring in judgment) (collecting cases)).

[2] Following the Supreme Court's lead, several of our sister circuits, like us, have recognized that courts may consider decisions from other circuits in the absence of binding precedent. *Werner v. Wall*, 836 F.3d 751, 762 n.28 (7th Cir. 2016) ("We are not alone in looking to trends in the decisional law of other jurisdictions once we are satisfied that controlling precedent in our own circuit does not clearly establish a particular legal right.") (citing *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015); *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011); *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011); *Wilson v. City of Boston*, 421 F.3d 45, 56 (1st Cir. 2005); *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002); *Trulock v. Freeh*, 275 F.3d 391, 407 (4th Cir. 2001)).

8

looked to precedent from other circuits. *See, e.g.*, *Pearson*, 555 U.S. at 244 (considering decisions from "three Federal Courts of Appeals" and noting officers "were entitled to rely on these cases, even though their own Federal Circuit had not yet ruled on" constitutional issue); *Brosseau v. Haugen*, 543 U.S. 194, 200–01 (2004) (discussing Sixth, Seventh, and Eighth Circuit cases in finding right not clearly established in Ninth Circuit).

## III.

## A.

Before we apply these rules to the instant case, we must first define the right at the "appropriate level of specificity," *Wilson*, 526 U.S. at 615, keeping in mind that the Supreme Court has cautioned against defining the right at too "high [a] level of generality," *Ashcroft*, 563 U.S. at 742. *See also id.* (noting, for example, the "general proposition" that whether "an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established").

At the outset, we preempt a possible point of confusion—Booker did *not* allege in his complaint that he has an absolute right to file prison grievances pursuant to the First Amendment. Rather, Booker alleged that he has a First Amendment right to be free from

retaliation when he does file a grievance pursuant to an existing grievance procedure.[3] *See* J.A. 32.

More particularly, Booker asserts that this right is rooted in the First Amendment's Petition Clause, which guarantees individuals the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. Booker contends that an inmate's right to petition is violated when he is retaliated against for filing a grievance. Appellees suggest in passing that we should not examine whether the right was established under the Petition Clause, apparently referencing the district court's refusal to consider the right to petition. With minimal explanation, the district court limited its analysis to the Free Speech Clause, stating that an "inmate's free speech right to submit internal grievances" was the right "pressed by the Plaintiff throughout this litigation." J.A. 136.

The district court should not have limited itself so. To the extent the court considered only the free speech right because Booker mentioned that clause in his pro se complaint, we note that Booker also generally alleged a violation of the First Amendment, J.A. 31, and that courts are obligated to "liberally construe[]" pro se

---

[3] Appellees quibble with the right at issue. They contend that the alleged retaliation was in response to Booker's submission of an RSM form—not a grievance. This is simply a matter of semantics. Inmates in the SCDC submit RSM forms to express grievances and initiate the grievance process, and this Court previously classified Booker's submission of the RSM form as "Booker's grievance," *Booker*, 583 F. App'x at 44. The Ninth Circuit rejected a near-identical distinction in *Brodheim v. Cry*, where the defendants suggested that an inmate could not bring a First Amendment retaliation claim because the alleged retaliation was in response to the inmate's filing of a document called an "interview request form." 584 F.3d 1262, 1271 n.4 (9th Cir. 2009). The court noted that the interview request form was "part of the grievance process" and held that the "applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint." *Id.*

10

complaints, "however inartfully pleaded," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).[4] Booker also directly argued to the district court that "[i]nstead of analyzing the first element to a First Amendment retaliation claim in the context of [] public employee speech, the [magistrate judge] should have realized that the facts in this case related more to a deprivation of Plaintiff's right to petition the government." Pl.'s Objections to Report and Recommendation, Dist. Ct. ECF No. 160, at 5 (May 6, 2015). Booker's detailed factual allegations and his reference to the First Amendment provide a more-than-sufficient basis for us to analyze whether the right was clearly established under the Petition Clause.

## B.

The clearly established inquiry asks whether the state of the law gave a reasonable prison official "fair warning" that retaliating against an inmate who files a prison grievance was unconstitutional.

It is "well established" in this Circuit that a "public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Trulock*, 275 F.3d at 405. Thus, if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional. The pertinent question in this appeal, then, is whether it was clearly established that an inmate

---

[4] Indeed, courts have liberally construed complaints even where pro se plaintiffs do not reference any source of law, *see Hodge v. Gansler*, 547 F. App'x 209, 210 n.1 (4th Cir. 2013) (construing claim for "racial profiling" as equal protection claim) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)), or where they cite the wrong part of the Constitution, *see Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014).

11

exercises a First Amendment right to petition for redress of grievances when he files a prison grievance. Framed differently, we must determine whether it was clearly established that an inmate's right to petition is violated when he is retaliated against for filing a grievance.

As noted, the first step is to consider cases of controlling authority in this jurisdiction. *See Owens*, 372 F.3d at 279–80. We thus start with Supreme Court, Fourth Circuit, and Supreme Court of South Carolina decisions that have addressed the asserted right. The parties do not contest the district court's finding that no decision from the United States Supreme Court or Supreme Court of South Carolina explicitly discusses the right. The parties do dispute, however, whether our Court has addressed it. Booker contends that the Fourth Circuit has not discussed in a published opinion whether inmates have a First Amendment right to be free from retaliation for filing grievances. For their part, Appellees appear to agree that this Court has never explicitly considered this right. Nevertheless, they contend that our decision in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), resolves the clearly established analysis in their favor.[5] They understand *Adams* to suggest that inmates do *not* exercise any constitutional right (under the First Amendment or otherwise) when they file a prison grievance. *See* Appellees' Br. 13–14; *see also id.* at

_____

[5] It is worth noting the change in Appellees' position. Earlier in the litigation, prior to the first appeal, they agreed with Booker that "it has been *clearly established* that a prison official may not retaliate against an inmate for . . . complaining about a prison official's conduct." Defs.' Reply to Pl.'s Response in Opp. to Mot. for S.J., Dist. Ct. ECF No. 48, at 8 (Jan. 17, 2013) (emphasis added).

17 (arguing that inmates exercise First Amendment right to petition by accessing the courts, not by filing grievances).

*Adams* does not stand for—or even imply—that proposition, however. There, an inmate claimed that when he requested protective custody, the prison officials retaliated against him by, among other things, denying him access to the prison's grievance process. *Adams*, 40 F.3d at 75. On appeal, the plaintiff "recast[] his protective custody request as an exercise of a 'right to inform' prison officials of dangerous conditions" incident to the Eighth Amendment. *Id.* In other words, Adams asserted he had a constitutional right "to a particular grievance procedure." *Id.* This Court held that the plaintiff had not exercised any such right by requesting protective custody. *Id.* We went on to state that "the Constitution creates no entitlement to grievance procedures or access to any such procedure." *Id.* (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (per curiam)).

*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example. But *Adams* is entirely silent on the issue in this case—whether an inmate's First Amendment right is violated when he is *retaliated against* for submitting a grievance pursuant to an existing grievance procedure. That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution.

13

As the Eighth Circuit explained nearly three decades ago, there is a very critical distinction between the right of access or entitlement to a grievance process and the right to be free from retaliation for filing a grievance:

> Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit. *That the Constitution does not obligate the state to establish a grievance procedure* is, we believe, of no consequence here . . . .

*Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (emphasis added). Indeed, the Eighth Circuit recognizes that (1) an inmate possesses a First Amendment right to be free from retaliation for filing a grievance, *id.*, while simultaneously recognizing that (2) an inmate does not have a due process "liberty interest in access to [a grievance] procedure," *Flick*, 932 F.2d at 729.

The Eighth Circuit is not alone in finding that although inmates do not have a constitutional entitlement to and/or due process interest in accessing a grievance procedure, they have a First Amendment right to be free from retaliation when they do file. *Compare Geiger v. Jones*, 404 F.3d 371, 374 (5th Cir. 2005) (finding no liberty interest in grievance procedure), *with Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008) (recognizing First Amendment retaliation right); *compare Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding inmates have "no legitimate claim of entitlement to a grievance procedure"), *with Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (recognizing First Amendment retaliation right); *compare Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (holding that inmates have "no constitutionally-protected

14

liberty interest in access to [grievance] procedure"), *with Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) (recognizing First Amendment retaliation right). Like our sister circuits, we see no inconsistency between these distinct legal principles.

In short, *Adams* concerns whether inmates have a constitutional entitlement to or liberty interest in accessing grievance procedures. It says nothing about whether a prison official violates an inmate's First Amendment rights by retaliating against the inmate for submitting a grievance. Therefore, contrary to Appellees' suggestion, *Adams* does not speak to the right at issue. As such, neither party has cited cases from courts of controlling authority—the Supreme Court, this Court, or the Supreme Court of South Carolina—that explicitly address an inmate's First Amendment right to be free from retaliation for filing a prison grievance.

To be sure, as discussed at oral argument, there are unpublished opinions in this Circuit that reference *Adams* and/or directly address the right in question. One such decision misconstrued *Adams* to preclude an inmate from bringing a First Amendment claim alleging retaliation in response to his verbal complaints to prison officials. *See Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011). Others properly applied *Adams*. *See, e.g.*, *Cameron v. Bonney*, 523 F. App'x 969, 970 (4th Cir. 2013) (applying *Adams* to reject inmate's claim that his constitutional rights were violated when he was denied access to a grievance form). And still more unpublished decisions found that

15

inmates can bring a First Amendment claim alleging retaliation for filing a grievance.[6]

*See, e.g.*, *Wright v. Vitale*, 937 F.2d 604, 1991 WL 127597, at \*1 (4th Cir. 1991) (unpublished table opinion); *Gullet v. Wilt*, 869 F.2d 593, 1989 WL 14614, at \*2 (4th Cir. 1989) (unpublished table opinion).  But because these unpublished opinions "are not even regarded as binding precedent in our circuit," as this Court sitting en banc has explained, they "cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity."  *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc).

We therefore agree with the district court's conclusion that no published decision from the Supreme Court, this Court, or the Supreme Court of South Carolina squarely addresses whether filing a grievance is protected First Amendment conduct.

The district court, after determining there were no binding cases that squarely established the specific First Amendment right, concluded that the right was not clearly established.  J.A. 137.  But the clearly established inquiry was not complete:  as this Court has stated, and as Booker recognizes, the "absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity."  *Owens*, 372 F.3d at 279.  The district court failed to consider whether, despite the lack of directly on-point,

---

[6] We have also found, in an unreported decision, that an inmate could bring a claim alleging he was transferred in retaliation for sending a letter to the mother of a fellow inmate who was severely beaten.  *Moore v. Bennette*, 97 F. App'x 405, 406 (4th Cir. 2004).  The retaliation claim was later acknowledged in a published decision, *see Moore v. Bennette*, 517 F.3d 717, 724 (4th Cir. 2008), and eventually evaluated by the district court as a First Amendment retaliation claim, *see Moore v. Bennette*, 777 F. Supp. 2d 969, 982–85 (E.D.N.C. 2011).

binding authority, the right was clearly established based on general constitutional principles or a consensus of persuasive authority.  We now proceed to that task.

C.

In the absence of controlling authority that specifically adjudicates the right in question, a right may still be clearly established in one of two ways.  A right may be clearly established if "a general constitutional rule already identified in the decisional law [] appl[ies] with obvious clarity to the specific conduct in question."  *Hope*, 536 U.S. at 741 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)); *see also Owens*, 372 F.3d at 279 (stating that a right may be clearly established if it is "manifestly apparent from broader applications of the constitutional premise in question").  A right may also be clearly established based on a "'consensus of cases of persuasive authority' from other jurisdictions."  *Owens*, 372 F.3d at 280 (quoting *Wilson*, 526 U.S. at 617).  Here, Booker argues that his First Amendment right was clearly established in both ways.

Arguably, the prohibition on retaliating against inmates for filing grievances was obviously unconstitutional given longstanding principles articulated in controlling authority.  It is beyond dispute that prison officials cannot retaliate against inmates for exercising a constitutional right.  *Trulock*, 275 F.3d at 405.  And Booker presents a logical and compelling argument that, in light of binding Supreme Court precedent, he exercised his constitutional right to petition the government for redress of grievances

17

when he filed an administrative grievance seeking redress for what he believed was the improper handling of his legal mail.[7]

In addition to Supreme Court precedent, this Court has long held that prison officials may not retaliate against prisoners for exercising their right to access the courts, *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978), which is a component of the right to petition for redress of grievances, *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Given the close relationship between an inmate filing a grievance and filing a lawsuit—indeed, the former is generally a prerequisite for the latter—our jurisprudence provided a strong signal that officials may not retaliate against inmates for filing grievances.

Regardless of whether Booker's right was obvious or "manifestly apparent" from broader principles in the decisional law, we find that it was clearly established based on a robust "consensus of persuasive authority." The Second, Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits have all recognized in published decisions that inmates possess a right, grounded in the First Amendment's Petition Clause, to be free from retaliation in response to filing a prison grievance. The Second Circuit, for instance,

_____

[7] The Supreme Court has long held that prisoners "retain the constitutional right to petition the government for the redress of grievances." *Turner v. Safley*, 482 U.S. 78, 84 (1987). This right "advance[s] personal expression," *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011), and "extends to all departments of the Government," including administrative agencies, *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Read together, Booker suggests it is clear that an inmate exercises the petition right when he files a grievance. The Supreme Court has further stated that prisoners retain "protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and *may draw upon internal prison grievance procedures* and state judicial review where available." *Sandin v. Conner*, 515 U.S. 472, 487 n.11 (1995) (emphasis added).

18

recognized that an inmate can bring a First Amendment right to petition claim when prison officials "intentionally file[] false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison." *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). The court later recognized the right in the context of retaliation against inmates for filing grievances. *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.") (citing *Franco*, 854 F.3d at 589–90). The Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits have likewise recognized that inmates possess a First Amendment petition right to be free from retaliation for filing grievances. *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (recognizing claim where inmate alleged that prison officials "impermissibly retaliated against him for exercising his First Amendment right to file grievances and petition the courts for redress"); *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007) (recognizing claim where inmate alleged he was retaliated against for "filing grievances against the prison" and noting "[s]uch retaliation violates a prisoner's right, founded on the First Amendment, to petition government for the redress of grievances"); *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994) (holding that "filing of a disciplinary charge becomes actionable if done in retaliation for the inmate's filing of a grievance" and stating that such conduct "strikes at the heart of an inmate's constitutional right to seek redress of grievances"); *Brodheim v. Cry*, 584 F.3d 1262, 1266, 1269–72 (9th Cir. 2009) (recognizing First Amendment petition right where inmate alleged retaliation for

19

filing grievances); *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance . . . ."); *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584–85 (D.C. Cir. 2002) (recognizing that prisoners "undoubtedly" exercise First Amendment petition right when filing grievances and stating that prison "officials may not retaliate against prisoners for filing grievances").

Even more, the Third, Fifth, and Tenth Circuits have recognized an inmate's right to be free from retaliation for filing a grievance under the First Amendment (albeit without referencing a particular clause). *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("[Inmate's] allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."); *Bibbs v. Early*, 541 F.3d 267, 271 (5th Cir. 2008) (recognizing First Amendment retaliation claim where official filed a disciplinary report "following an inmate's filing of a grievance"); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) ("[T]he district court erred in dismissing plaintiff's claim that that he was denied particular job assignments or was transferred from one job to another in retaliation for filing administrative grievances or the present civil rights action. Again, although plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights . . . .").

Given the decisions from nearly every court of appeals, we are compelled to conclude that Booker's right to file a prison grievance free from retaliation was clearly

established under the First Amendment. Consistent with fundamental constitutional principles and common sense, these courts have had little difficulty concluding that prison officials violate the First Amendment by retaliating against inmates for filing grievances. Rarely will there be such an overwhelming consensus of authority recognizing that specific conduct is violative of a constitutional right. The unanimity among our sister circuits demonstrates that the constitutional question is "beyond debate," and therefore we find that the right at issue was clearly established.

Appellees do not dispute this consensus among the federal appellate courts. They instead argue that there is a "body of case law within the Fourth Circuit that specifically holds prisoners have no constitutional right to file a grievance." Appellees' Br. 13. This "body of case law" consists of three published district court opinions from the Western District of Virginia, two of which were issued by the same district judge and do not even mention the First Amendment. *See id.* at 14. All three decisions erroneously rely on *Adams* in rejecting an inmate's claim that he was retaliated against for filing grievances. *See, e.g.*, *Brown v. Angelone*, 938 F. Supp. 340, 346–47 (W.D. Va. 1996).

These district court decisions do not alter our conclusion that the right was clearly established. First, it is unclear whether we should include district court opinions in the balancing of "persuasive authority." As the Supreme Court has remarked, "[m]any Courts of Appeals [] decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity." *Camreta*, 563 U.S. at 709 n.7. The Court went on, "[o]therwise said, district court decisions—unlike those from the courts of appeals—do not necessarily settle

21

constitutional standards or prevent repeated claims of qualified immunity." *Id.* Given that published district court opinions, like unpublished opinions from our Court, have no precedential value, it follows that we should not consider them. But even if we classify published district court opinions as relevant "persuasive authority," they are "no match for the Circuit precedents." *Hope*, 536 U.S. at 747. When weighed against the circuit precedents, there is still an overwhelming "consensus of persuasive authority" that inmates possess a First Amendment right to be free from retaliation for filing a grievance.

Our "conclusion that 'a reasonable person would have known,' *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 818 (1982)], of the violation is buttressed by" the South Carolina Department of Correction's internal policies. *Hope*, 536 U.S. at 744. Although officials "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," *Davis v. Scherer*, 468 U.S. 183, 194 (1984), the Supreme Court has analyzed prison regulations in combination with case law to determine whether an individual had fair warning, *see Hope*, 536 U.S. at 741–45 (relying on binding precedent, Alabama Department of Corrections regulation, and Department of Justice report in finding conduct violated clearly established right); *see also Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013) (stating that "regulations governing the conduct of correctional officers are also relevant in determining whether an inmate's right was clearly established") (quoting *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (citing *Hope*, 536 U.S. at 743–744)); *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433–34 (2d Cir. 2009).

22

Here, the SCDC's detailed policy document concerning the "Inmate Grievance System"[8] expressly provides that "[n]o inmate will be subjected to reprisal, retaliation, harassment, or disciplinary action for filing a grievance or participating in the resolution of a grievance." J.A. 57–58. The record further indicates that this prohibition was communicated to prison officials: "As part of the Department orientation program, all newly hired employees will receive written and/or oral explanations of the Department's grievance policy/procedure by a representative of the Inmate Grievance Branch." J.A. 57. Again, the fundamental inquiry for purposes of qualified immunity is whether a reasonable official in Jones's position had "fair warning" that the alleged conduct was unconstitutional. *Hope*, 536 U.S. at 741. The unequivocal language of SCDC's own policies provides additional support for our finding that Jones had such warning here.

In sum, given the authority discussed above, we conclude that a reasonable prison official had fair warning that retaliating against an inmate who filed a prison grievance was unlawful. Because an inmate's First Amendment right to be free from retaliation for filing a grievance was clearly established, we find that Appellees are not entitled to

---

[8] We treat the "Inmate Grievance System" document as a prison regulation. As the South Carolina Court of Appeals recently explained with respect to this exact document, "[a]lthough SCDC's statements concerning the inmate grievance system are within a document entitled 'SCDC Policy/Procedure,' they are 'binding norms' and, thus, more like rules or regulations . . . than they are true policy statements." *Ackerman v. S. Carolina Dep't of Corr.*, 782 S.E.2d 757, 761 n.6 (S.C. Ct. App. 2016). And this Court has previously classified SCDC policy statements as regulations. *See Hines v. S. Carolina Dep't of Corr.*, 148 F.3d 353, 358 (4th Cir. 1998) (classifying SCDC "Grooming Policy" as "neutral and generally applicable regulation").

23

qualified immunity on that basis and therefore the district court erred in granting their motion for summary judgment.

## IV.

For the foregoing reasons, the judgment of the district court is vacated, and we remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

TRAXLER, Circuit Judge, dissenting:

Relying on decisions from other circuits, the majority concludes that a prisoner's right to be free from retaliation for filing a grievance was clearly established in 2010, when the actions giving rise to this lawsuit took place. Even assuming that that right may have been clearly established in *other* circuits, the case law from *this* circuit in 2010 could reasonably be understood as foreclosing that claim. *See Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994). Because the controlling law in this circuit did not put the prison officials on notice that their conduct violated Booker's constitutional rights, I believe the prison officials are entitled to qualified immunity. Accordingly, I respectfully dissent.

## I.

Qualified immunity works to "avoid excessive disruption of government," *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), by "protect[ing] government officials performing discretionary functions from civil damage suits insofar as the officials' conduct does not violate clearly established rights of which a reasonable person would have known," *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (internal quotation marks and alteration omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks, citations and alteration omitted).

As a general rule, we look only to "the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose" when determining

whether the defendant is entitled to qualified immunity. *Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016) (internal quotation marks omitted). If the case law of this court has addressed the relevant constitutional question, contrary rulings from other circuits are not relevant to the qualified-immunity inquiry. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) ("If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." (internal quotation marks and alteration omitted)). In the absence of controlling authority from either the Supreme Court, this court, or the highest state court, however, the existence of "a consensus of cases of persuasive authority" from other jurisdictions can be enough to foreclose a claim of qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011) (internal quotation marks omitted); *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279-80 (4th Cir. 2004).

## II.

In the majority's view, there was no controlling authority from this circuit in 2010 addressing whether retaliation against an inmate for filing a grievance violates the inmate's rights under the First Amendment. The majority therefore looks to case law from other circuits, finds a consensus, and holds that an inmate's right to be free from retaliation for participating in the grievance system was clearly established.

I do not disagree that the weight of authority outside this circuit holds that the First Amendment is violated when prison officials retaliate against an inmate for filing a grievance under an established grievance system. Where I disagree with the majority is in its conclusion that case law from this circuit was silent on the relevant First Amendment question. In my view, this court's decision in *Adams v. Rice* could

26

reasonably be understood as holding that an inmate's use of a prison grievance system does not implicate the First Amendment and that grievance-based retaliation against the inmate likewise does not implicate the First Amendment. Because *Adams* can reasonably be understood to permit the actions of the prison officials at issue in this case, the majority erred by looking outside the circuit to conclude otherwise. *See Edwards*, 178 F.3d at 251.

A.

In *Adams*, a North Carolina inmate requested a transfer to protective custody after he was threatened by other inmates. State prison officials approved that request and directed that the inmate be transferred to the protective custody facility at a different prison. The inmate was never transferred, however, but was instead held in segregation for nine months. He was released from segregation and transferred to another prison after he withdrew his request for protective custody. *See Adams*, 40 F.3d at 73.

Proceeding *in forma pauperis* under the version of 28 U.S.C. § 1915 then in effect, the inmate thereafter filed a lawsuit alleging that prison officials, in retaliation for his protective-custody request, had refused to transfer him to the protective-custody facility, "denied him minimum custody status, failed to schedule a parole eligibility date and hearing, and barred his access to the grievance process." *Adams*, 40 F.3d at 74. The district court concluded that the inmate's claim lacked an arguable basis in law or in fact and therefore dismissed the inmate's claims as frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact.").

The inmate appealed, contending that his complaint at least arguably stated claims of retaliation for the exercise of constitutionally protected rights. Because the Eighth Amendment protects inmates "from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm," *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987), the inmate contended that his reporting of the threats against him and request for protective custody were at least arguably protected by the Eighth Amendment:

> Given that prisoners' right to be protected hinges to a large extent on whether the risks are *known* by the prison officials to exist, it is arguable, that prisoners must perforce have a right to be free from retaliation in *reporting* such risks to those same officials. Freedom to report such incidents would appear to be an essential ingredient to the exercise of the recognized right to be free from harms prison officials know about and are in a position to prevent.

*Adams v. Rice*, Brief of Appellant, 1994 WL 16014459, at *17.

This court rejected the inmate's arguments. We first agreed with the district court that the inmate's claims were factually frivolous, as there were no allegations in the complaint asserting that the single-cell housing the inmate received was in any way different from the protective custody he requested. *See Adams*, 40 F.3d at 75.

We likewise agreed with the district court's determination that the complaint was legally frivolous. As we explained, "claims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.*

28

Applying that standard, we rejected the inmate's claim that he exercised an Eighth Amendment right when he requested protective custody:

> Appellant's assertion of a "right to inform" states only a claim of entitlement to a particular grievance procedure because he seeks, in essence, a means of bringing complaints regarding his incarceration to the attention of prison officials. As other circuits have recognized, there is no constitutional right to participate in grievance proceedings.

*Id.* Addressing the specific instances of retaliation by prison officials alleged by the inmate, we explained that the inmate's claims were doomed by the absence of an underlying constitutional right. *See id.* As is most relevant to this case, we explained that the inmate's claim that prison officials prevented him from accessing the prison grievance system was legally frivolous because "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Id.*

B.

The majority reads *Adams* as holding that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example." *Majority Op.* at 13. According to the majority,

> *Adams* is entirely silent on the issue in this case – whether an inmate's First Amendment right is violated when he is *retaliated against* for submitting a grievance pursuant to an existing grievance procedure. That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution.

29

*Id.* Because *Adams* does not "explicitly address" the constitutional right being pressed in this case, *id.* at 15, the majority dismisses *Adams* entirely and turns to cases outside this circuit to find the right clearly established.

I believe the majority interprets *Adams* far too narrowly. *Adams* makes two separate holdings addressing prison grievance systems. First, *Adams* holds that an inmate cannot demand a grievance system structured to address whatever complaints he might want to raise. *See Adams*, 40 F.3d 75 (rejecting inmate's claim of entitlement to "a means of bringing complaints regarding his incarceration to the attention of prison officials"); *id.* ("[T]he Constitution creates no entitlement to grievance procedures . . . ."). Second, *Adams* holds that inmates have no constitutional right to *participate* in a prison's existing grievance system. *See id.* ("[T]here is no constitutional right to participate in grievance proceedings."); *id.* ("[T]he Constitution creates no entitlement to . . . access to any [grievance] procedure voluntarily established by a state."). An inmate *participates* in a grievance system, of course, by *filing a grievance*.

When discussing *Adams*, the majority acknowledges the second holding only indirectly, by referring to an unpublished opinion that "properly applied *Adams*" to reject an inmate's constitutional claim based on refusal to supply grievance forms. *Majority Op.* at 15. The majority, however, never grapples with the implications of *Adams'* second holding except to suggest, indirectly, that while there may be no First Amendment right to *file* a grievance, if a grievance is in fact filed, retaliation based on the grievance violates the First Amendment. *See id.* (discussing unpublished opinion that "misconstrued *Adams* to preclude an inmate from bringing a First Amendment claim

30

alleging retaliation in response to his verbal complaints to prison officials."). I do not believe that *Adams* can be distinguished in this manner.

As we explained in *Adams*, retaliation claims are actionable under § 1983 only if "the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken in response to *the exercise of a constitutionally protected right* or that the act itself violated such a right." *Adams*, 40 F.3d at 75 (emphasis added). If an inmate has no constitutional right to file a grievance, as *Adams* held, then the inmate exercises no constitutional right by filing a grievance. And if filing a grievance implicates no constitutional right, then retaliation against the inmate because of the grievance does not violate the Constitution. *See id.* ("A claim of retaliation that fails to implicate any constitutional right lacks even an arguable basis in law." (internal quotation marks omitted)). I simply see no basis for concluding, as the majority apparently does, that the act of filing a grievance -- an act that is *not* constitutionally protected -- somehow imbues the filing with constitutional protections.

Accordingly, it seems to me that this court's decision in *Adams* affirmatively closes the door to the retaliation claim being asserted here. While there may be no single sentence in *Adams* that explicitly states that retaliation based on an inmate's filing of a grievance will not support a constitutional claim under § 1983, the qualified-immunity inquiry does not require that level of specificity. *See, e.g., Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) (explaining that the qualified-immunity analysis "must take into consideration not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle

31

invoked" (internal quotation marks omitted)). For the reasons outlined above, the conclusion that the retaliation alleged in this case is not sufficient to support a claim of retaliation under § 1983 follows inexorably from *Adams*' clear and explicit holding that inmates have "no constitutional right to participate in grievance proceedings." *Adams*, 40 F.3d at 75.

Even if it were somehow possible to draw the majority's fine, lawyerly line between this case and *Adams*, it still would not be appropriate to deny qualified immunity. The qualified-immunity inquiry focuses on *notice* – whether the existing precedent gives the officials "fair notice that they are acting unconstitutionally." *Mullenix v. Luna*, 136 S. Ct. 305, 314 (2015) (per curiam) (internal quotation marks omitted). Thus, the question is not whether this court can come up with a plausible way of distinguishing *Adams* from the facts of the case at bar; the question is whether, in light of *Adams*, a prison official could "reasonably believe[] that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

For the reasons outlined above, I believe that a reasonable prison official could read *Adams* as permitting the actions that were taken in this case. Indeed, the reasonableness of such a reading is confirmed by the fact that this court has applied *Adams* in that very way. *See Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (per curiam) (applying *Adams* to reject inmate's claim that prison officials violated his

32

First Amendment rights by retaliating against him for filing a verbal grievance).[1]  While

the majority now says that *Daye* "misconstrued" *Adams*, *Majority Op.* at 15, the question

is not whether that reading of *Adams* ultimately proves to be wrong, but whether that

reading of *Adams* is *reasonable*:

> In interpreting qualified immunity . . . , we must appreciate the fact that the direction of the law may be difficult to ascertain. Thus, although public officials may be charged with knowledge of constitutional developments, they are not required to predict the future course of constitutional law. . . . The requirement, after all, is that the law be clearly established, not simply possibly established or even probably established. *Since qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, it surely must be appropriate when reasonable jurists can do so*.

*Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) (emphasis added; citation and

internal alteration omitted); *see Saucier v. Katz,* 533 U.S. 194, 205 (2001) ("The concern

of the immunity inquiry is to acknowledge that *reasonable mistakes* can be made as to

the legal constraints on particular police conduct. . . . If the officer's mistake as to what

the law requires is reasonable, . . . the officer is entitled to the immunity defense."

---

[1] The panel of judges deciding Daye included Judge Wilkinson, who wrote the opinion in Adams.  That the author of Adams agreed with the analysis in Daye provides an additional indication of the reasonableness of its analysis.

Although unpublished opinions do not clearly establish constitutional rights and thus cannot be relied upon to impose liability on a government official, see Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc), I do not believe Hogan precludes consideration of unpublished opinions when declining to impose liability, see id. ("We could not allow liability to be imposed upon public officials based upon unpublished opinions that we ourselves have determined will be binding only upon the parties immediately before the court.").

(emphasis added)), *overruled on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009).

In my view, *Adams* directly, though not explicitly, forecloses Booker's retaliation claim. But even if the distinction between this case and *Adams* that the majority apparently embraces were viable, a reasonable prison official could still conclude that the actions alleged in this case were permissible under this court's decision in *Adams*. *See Reichle*, 132 S. Ct. at 2093 (qualified immunity should be granted unless the unlawfulness of the challenged action would be apparent to "every reasonable official." (internal quotation marks omitted)). I therefore believe that the defendants are entitled to qualified immunity.

C.

I recognize, of course, that other circuits considering the issue have concluded that prison officials violate the First Amendment if they retaliate against an inmate for filing a grievance. Regardless of how compelling the majority may find the analysis of those cases, they simply are not relevant to our qualified-immunity inquiry.

As this court has frequently explained, "[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) (internal quotation marks omitted). Because *Adams* is binding, controlling authority that rejects Booker's claim, the majority errs by dismissing *Adams* and relying on cases outside this circuit to deny qualified immunity. *See Owens*, 372 F.3d at 280 (explaining that when

performing the qualified-immunity analysis, courts may look to case law from other circuits only if there is no "controlling authority"); *Edwards*, 178 F.3d at 251 ("If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." (internal quotation marks and alteration omitted)).

If the majority believes *Adams* was wrongly decided,[2] the proper way to correct the error is through en banc proceedings. The majority's chosen path of artificially narrowing the reach of *Adams*' holdings and then dismissing the case as irrelevant because it is not "directly on-point," *Majority Op.* at 16, is disingenuous and inconsistent

---

[2] The majority grounds the right at issue in this case in the First Amendment's Petition Clause, and the majority seems to suggest that Adams' determination that inmates have no constitutional right to participate in grievance proceedings is wrong because exhaustion of remedies is generally required before a prisoner can file a civil action challenging his conditions of confinement. See Majority Op. at 18. I disagree.

Adams was decided in 1994, before the PLRA made exhaustion of "available" administrative remedies a mandatory prerequisite for all prison-condition lawsuits. 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006) (explaining evolution of exhaustion requirements). Nonetheless, as the Eighth Circuit explained in Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) (per curiam) -- a case we relied on in Adams -- "the prisoner's right to petition the government for redress is the right of access to the courts." Id. at 729 (emphasis added). If prison officials prevented an inmate from pursuing a grievance through an existing grievance system, then the administrative remedies were not "available" to the inmate, and the PLRA would not bar the inmate from pursuing his claim in court. See, e.g., Kervin v. Barnes, 787 F.3d 833, 835 (7th Cir. 2015) (explaining that if a state creates a grievance system "yet prevents a prisoner from utilizing it he will be excused from having to exhaust the grievance process as a prerequisite to suing in federal court"); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a) . . . ." (internal quotation marks and alteration omitted)). Adams' conclusion that there is no constitutional right to file a grievance, even when considered in light of the PLRA's mandatory exhaustion requirement, does not restrict an inmate's rights under the Petition Clause.

35

with our approach to resolving questions of qualified immunity and with our obligation to follow our own precedent.

III.

In *Adams*, this court held that "there is no constitutional right to *participate* in grievance proceedings." 40 F.3d at 75 (emphasis added). Because inmates participate in grievance proceedings by *filing a grievance*, our decision in *Adams* must be understood as holding that inmates have no constitutional right to file a grievance. The filing of a grievance therefore implicates no constitutional right of the inmate and cannot support a retaliation claim against prison officials. *See id.* ("[C]laims of retaliatory actions are legally frivolous unless the complaint *implicates some right that exists under the Constitution.* That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." (emphasis added)).

*Adams* is binding authority that directly rejects the constitutional right asserted in this case. The majority errs by ignoring *Adams* and relying instead on out-of-circuit cases that are inconsistent with our holding in *Adams* in order to declare that an inmate's right to be free from retaliation for filing a grievance was clearly established.

Accordingly, for the foregoing reasons, I believe that the defendants are entitled to qualified immunity, and I therefore respectfully dissent from the majority's contrary conclusion.

36